**SO ORDERED.**

**SIGNED this 08 day of December, 2010.**



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE
_____

OPINION DESIGNATED FOR ON - LINE PUBLICATION
BUT NOT PRINT PUBLICATION

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SCOTT E. NULIK, | ) | Case No. 08-10673 |
| STEPHANIE G. NULIK, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| STEVEN L. SPETH, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Adversary No. 08-5257 |
| | ) | |
| 21ST MORTGAGE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### MEMORANDUM OPINION

-1-

The chapter 7 trustee Steven Speth asserts that defendant 21st Mortgage Corporation violated the automatic stay when it removed and sold a mobile home without first obtaining a court order lifting the automatic stay. He claims the estate was damaged because the Trustee was unable to rent the mobile home for four months. 21st Mortgage defends by asserting that 11 U.S.C. § 362(h)(1) operated to remove the property from the bankruptcy estate and therefore from the protection of the stay. It also contends that the Trustee has not satisfied his burden of proof on the damages caused by the alleged stay violation. The Court conducted a trial on this adversary proceeding on August 17, 2010, hearing testimony of the Trustee and a representative of 21st Mortgage, as well as receiving pre-trial briefs from the parties.[1] The Court is now ready to rule.[2]

Jurisdiction

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O) over which this Court has subject matter jurisdiction.[3]

Preliminary Matters

The parties filed two motions prior to trial of this matter: (1) the Trustee filed a motion to strike;[4] and (2) 21st Mortgage filed a motion in limine to exclude expert and opinion testimony regarding rental value.[5] The Court disposed of 21st Mortgage's motion at the start of trial and took

---

[1] Dkt. 46 and 48.

[2] The Trustee Steven Speth appears in person and by his attorney Timothy J. King. 21st Mortgage Corporation appears by its attorney Tyson C. Langhofer.

[3] 28 U.S.C. § 1334(b) and § 157(b)(1).

[4] Dkt. 49.

[5] Dkt. 45.

-2-

the Trustee's motion under advisement with the merits of the case.[6] The Court therefore now addresses the Trustee's motion.

The Trustee moved to strike 21st Mortgage's defense under § 362(h)(1), specifically its defense that the mobile home was not property of the estate at the time 21st Mortgage took possession. The Trustee contends that the defendant first raised this defense in its trial brief and did not expressly plead that defense in its answer or the final pretrial order.[7] The Trustee further submits that this defense is an affirmative defense that was required to have been previously pled. Both of these assertions may or may not be technically correct, but given the tortured procedural history of this adversary proceeding, the Court fails to see that any prejudice accrues to the Trustee if this "defense" is allowed.[8]

---

[6] Dkt. 51. The Court granted 21st Mortgage's motion in limine as to expert witness Tom Tuttle but denied the motion in limine as to the Trustee Steve Speth. The Court concluded that the Trustee was a party and that his opinion testimony as to the amount of lost rent would be helpful to a determination of damages and that as Trustee, he has experience and familiarity in renting property, and thus his opinions are rationally based upon his perception. *See* Fed. R. Evid. 701 and 704. *See also Rural Water Dist. No. 4, Douglas County, Kansas v. City of Eudora, Kansas,* 604 F. Supp. 2d 1298, 1312 (D. Kan. 2009). The Trustee's opinion testimony is not unlike that of an owner of property. *See Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1174-75 (3d Cir. 1993) (Owner or officer of a business is permitted to testify to the value or projected profits of the business without qualifying as an expert.).

[7] 21st Mortgage did deny the Trustee's allegation in the complaint that it "did wrongfully convert post petition *from the bankruptcy estate* a certain 1998 Skyline mobile home . . ." Dkt. 1, ¶ 5; Dkt. 18, ¶ 5. Similarly, 21st Mortgage identified as an issue of law in the final pretrial order, "[w]hether [its] actions constitute wrongful conversion of property of the estate," but did not specifically assert § 362(h)(1) as an affirmative defense. Dkt. 30, pp. 3-4.

[8] In order to prevail on a claim of conversion, it would be incumbent upon the Trustee to prove that the mobile home was property of the estate and that 21st Mortgage exercised unauthorized possession and control over the mobile home. *See In re Hamlin,* 411 B.R. 310 (Bankr. W.D. La. 2009); *In re Advanced Modular Power Systems, Inc.,* 413 B.R. 643 (Bankr. S.D. Tex. 2009). Likewise, there is no violation of the automatic stay if the creditor takes action toward property that is not part of the bankruptcy estate. *See In re Flanagan*, 415 B.R. 29 (D. Conn. 2009) (Property must be considered part of bankruptcy estate to receive the protection of

The Trustee's cause of action has morphed from a post-petition conversion of estate property to a stay violation. The parties will recall that the Trustee initially pled a cause of action in conversion and sought damages of $12,000 (the value of the mobile home),[9] but submitted a proposed journal entry of default judgment allowing the avoidance of a preference under § 547.[10] The Court inadvertently entered that journal entry, but granted 21st Mortgage relief from the judgment when it asserted that its registered agent had failed to forward the complaint to it.[11] In the final pretrial order, the Trustee changed his theory from conversion to a stay violation: the "defendant wrongfully took possession of the subject mobile home, post-petition, without obtaining stay relief" and that the estate sustained damages.[12] As the Court determined on summary judgment,

---

the automatic stay and provide basis for request for contempt against stay's violators). *See also* § 362(c)(1) ("Except as provided in subsections (d), (e), (f), and (h) of this section – the stay of an act against property of the estate . . . continues until such property is no longer property of the estate."). Thus, for either a conversion claim or a stay violation, it must be established that plaintiff has the right to possession of the subject property and/or that the subject property is property of the estate. Arguably, this "defense" has been present in this case from the outset by 21st Mortgage's denial in its answer, and therefore no surprise or prejudice results to the Trustee in allowing 21st Mortgage to defend on the basis of § 362(h)(1).

[9] It is noteworthy that the commencement of the adversary proceeding on October 22, 2008, followed contempt proceedings in the bankruptcy case where the Trustee filed a motion for contempt against 21st Mortgage for taking possession of the mobile home without obtaining stay relief. *See* Case No. 08-10673, Dkt. 31. 21st Mortgage did not appear at the hearing on the contempt motion (presumably because the Trustee failed to obtain proper service of the motion on 21st Mortgage) and the Trustee obtained sanctions of $12,000 against 21st Mortgage. *See* Case No. 08-10673, Dkt. 40. That order was never journalized and the Trustee subsequently withdrew his motion for contempt on October 17, 2008 and filed this adversary proceeding (as an action for conversion) five days later. *See* Case No. 08-10673, Dkt. 41.

[10] Dkt. 1 and 7.

[11] Dkt. 14 and 17.

[12] Dkt. 30, p. 3. This new, or revived, theory was injected into the final pretrial order without objection by 21st Mortgage.

-4-

those damages amounted to the rent that the Trustee contends he could have charged for the mobile home during the period before 21st Mortgage removed it.[13] 21st Mortgage now seeks to defend its actions by asserting that, under § 362(h)(1), the mobile home was no longer property of the estate and that 21st Mortgage was entitled to employ state law self-help to take possession of it without first obtaining a stay relief order.

The Court need not decide whether 21st Mortgage's § 362(h)(1) defense is an avoidance or affirmative defense that should have been pled in its answer under Fed. R. Civ. P. 8 and 12. As observed in *Sender v. Mann*:[14]

> An affirmative defense is different from a denial. An affirmative defense is a basis for denying liability even if the facts of a complaint are true, while a denial simply denies the facts of a complaint. *Bobbitt v. Victorian House, Inc.*, 532 F.Supp. 734, 736 (N.D.Ill.1982). A defendant's denial of an element of an offense is not properly an affirmative defense but a denial. *In re Kmart Corp.*, 318 B.R. 409, 413 (Bkrtcy.N.D.Ill. 2004). Sender contends that these affirmative defenses all rebut one or more elements of the prima facie case of a specific claim, and so are denials and not affirmative defenses. Sender argues that since the Freeborn defendants and the Leone defendants have already denied these claims, the affirmative defenses are redundant with the denials and should be stricken.
>
> A defense should not be stricken "if there is any real doubt" about its validity, and "[T]he benefit of any doubt should be given to the pleader." *Bobbitt*, 532 F.Supp. at 736. Since it is often unclear whether a defendant should properly plead a argument as a denial or a defense, and because a defense not plead is waived, a "cautious pleader" will often err on the side of labeling an argument as a defense. Id. There is no reason to penalize such a mistaken pleading by granting a motion to strike. *Id.*
>
> In addition, there is some authority for the proposition that the federal rules allow a defendant to plead an affirmative defense that is also a denial. *See Best Foods v. General Mills*, 59 F.Supp. 201, 203 (D.C.Del.1945), *Chasan v. Mutual Factors*, 3 F.R.D. 477, 478 (S.D.N.Y.1943), *Allegheny County Sanitary Authority*

---

[13] Dkt. 54.

[14] 432 F. Supp. 2d 1155 (D. Colo. 2006).

> *v. U.S. E.P.A.*, 557 F.Supp. 419, 426 (W.D.Pa.1983). Most important, "[R]edundant allegations need not be stricken if their presence in the pleading cannot prejudice the adverse party." *Id.*[15]

Where, as here, the Trustee makes no showing that he is prejudiced by injection of the denial or "defense" that the mobile home is not property of the estate,[16] justice requires the lenient use of the Court's discretion in allowing the § 362(h)(1) "defense" to be tried.[17] The Trustee's motion to strike is therefore denied. The Court now turns to the merits and trial of the Trustee's alleged stay violation.

Factual Background

Most of the facts that matter in this case, with the exception of evidence that might support a damage award, were deemed established on summary judgment. Because the Court ruled on that motion from the bench, we revisit those facts here, as supplemented with the evidence presented at trial.

Prior to her marriage to Scott Nulik, Stephanie Schwonkiller purchased a mobile home from a dealer who assigned her purchase money loan and security agreement to 21st Mortgage. 21st Mortgage properly perfected its security interest by evidencing its lien on the title of the mobile home on May 14, 2007. On March 31, 2008, the Nuliks filed this chapter 7 case. In the initial bankruptcy filings, Ms. Nulik stated her intention to surrender the mobile home as is required by §

---

[15] *Id.* at 1163-64.

[16] As noted previously, establishing that the mobile home is property of the estate is an element of the Trustee's claim. *See* Note 8, *supra.*

[17] *See also,* Fed. R. Civ. P. 12(f); *Hayne v. Green Ford Sales, Inc.,* 263 F.R.D. 647 (D. Kan. 2009) (A motion to strike an affirmative defense will not be granted unless the insufficiency of the defense is clearly apparent; the decision to strike an affirmative defense rests within the sound discretion of the district court.); *Dockhorn v. Kitchens by Kleweno,* 2010 WL 1196425 (D. Kan. Mar. 23, 2010) (Motions to strike are generally disfavored).

521(a)(2)(A). She did not claim the mobile home as exempt. On April 21, 2008, 21st Mortgage wrote to the Trustee advising that the mobile home had been voluntarily surrendered and that it would take possession to protect its interests.[18] The Trustee did not respond to the April 21 letter. On May 6, 2008, the Trustee conducted the first meeting of creditors. In late July of 2008, 21st Mortgage took possession of the mobile home, changed the locks, and moved the home off the mobile home park lot, all without filing a stay relief motion.[19] On or about August 18, 2008, the Trustee sent his property manager to prepare the mobile home for rental or sale and the property manager discovered that the mobile home was missing. This is when the Trustee learned that 21st Mortgage had established possession and control over the mobile home.[20]

When the Trustee discovered that the home had been taken by defendant without stay relief, he filed a motion for contempt on September 9, 2009.[21] 21st Mortgage did not respond to the motion or appear, and Judge Somers granted it in open court on October 9, 2008.[22] Thereafter, the Trustee sought to withdraw the motion and this Court entered an order doing so on October 17, 2008.[23] He then filed this adversary proceeding on October 22, 2008. The Trustee was granted default judgment in the amount of $12,750 on January 8, 2009. Thereafter, in May of 2009, 21st Mortgage sold the

---

[18] Trial Ex. C.

[19] Trial Ex. E.

[20] *See* § 362(a)(3).

[21] Dkt. 31.

[22] Dkt. 40.

[23] Dkt. 41. The Court notes that service of the contempt motion on "21st Mortgage" without designating a registered or managing agent or officer, was likely insufficient under Fed. R. Bankr. P. 7004.

-7-

mobile home for $15,000. It is unclear whether 21st Mortgage knew about the adversary proceeding at that time. On July 15, it sought relief from the default judgment and this Court set it aside at a hearing held on August 13, 2009. Counsel never submitted an order setting it aside, but 21st Mortgage filed an answer shortly thereafter.

The Trustee testified that he received prior to the § 341 meeting of creditors, the April 21 letter describing Nulik's "voluntary surrender" of the mobile home. He understood that 21st Mortgage claimed a lien in the mobile home and that 21st Mortgage was going to protect or secure its collateral. At the May 6 meeting of creditors, the Trustee obtained the keys from Ms. Nulik. He intended to rent the home as is his custom in administering estates.[24] Speth testified that, in his experience, trustees often rent mobile homes for short periods of time, four to six months, at a rate of $600-$800 per month. Sometimes the tenant actually buys the home. Speth says that after the April letter, he never heard further from 21st Mortgage. The Trustee testified that he could have rented this home for at least four months, from September to December of 2008 at a monthly rate of at least $600.

21st Mortgage's Chris Caldwell testified that he is the coordinator of the legal department for 21st Mortgage and oversees foreclosure and bankruptcy proceedings of its borrowers. He is informed as to the customary process for dealing with surrendered mobile homes. He stated that 21st Mortgage reviews statements of intention when debtors file bankruptcy and if the debtor states an intention to surrender, the company corresponds with the debtor's counsel to accept the surrender, determine if the debtor has vacated the property, and take steps to prevent loss. A letter like the

---

[24] The Trustee estimated that he rents 6-10 mobile homes a year. Here, after the May § 341 meeting, the Trustee made no effort to rent the mobile home until August of 2008 when he sent his property manager out to the property.

Case 08-05257   Doc# 55   Filed 12/08/10   Page 8 of 16

April letter here[25] is customarily sent to the debtor's attorney and trustee only after the property has been surrendered and abandoned or vacated by the borrower. The April 21 letter was in fact addressed to the Trustee and copied to debtor's counsel Ms. Arst. Only where the debtor fails to surrender or indicate its intent to surrender the property was it 21st Mortgage' practice to seek stay relief. Caldwell testified that 21st Mortgage established this practice on the advice of counsel and that it had never been sued.[26] Caldwell testified that his company believed that once a mobile home is "abandoned," the company would be justified in exercising state law self-help to recover it. After this litigation began, however, 21st Mortgage discontinued that practice. It now defers taking possession until a discharge is entered.[27]

Analysis

In a nutshell, 21st Mortgage argues that it did not violate the stay because, by operation of § 362(h)(1), the mobile home was no longer property of the bankruptcy estate once thirty days passed after the first meeting of the creditors on May 6, 2008. If the mobile home was not property of the bankruptcy estate, it is not protected by the automatic stay.[28] As the party defending against the alleged stay violation and asserting that the stay was inapplicable to its actions, 21st Mortgage

---

[25] Exhibit C.

[26] Mr. Caldwell is not an attorney, though the Court notes his apparent understanding of commercial law and practice.

[27] *See* § 362(c)(2)(C).

[28] *See In re Soll,* 181 B.R. 433 (Bankr. D. Ariz. 1995) (The automatic stay protects property of the estate); *In re Owens,* 379 B.R. 558 (Bankr. W.D. Pa. 2007); *In re Flanagan*, 415 B.R. 29 (D. Conn. 2009) (Property must be considered part of bankruptcy estate to receive the protection of the automatic stay and provide basis for request for contempt against stay's violators). *See also* § 362(c)(1) ("Except as provided in subsections (d), (e), (f), and (h) of this section – the stay of an act against property of the estate . . . continues until such property is no longer property of the estate.").

bore the burden of proof on its defense.[29]  Close examination of § 362(h)(1) and its application to these facts shows that defendant's position, at least on this point, is without merit.[30]

Section 362(h)(1) provides that in an individual case, the automatic stay terminates with respect to personal property of the estate or personal property of the debtor securing a claim "and such personal property shall no longer be property of the estate if" the debtor: (A) <u>fails</u> to timely file the debtor's statement of intention as required by § 521(a)(2) or to indicate in that statement that the debtor intends to surrender the property, redeem the property, or reaffirm the debt that it secures; <u>and</u> (B) <u>fails</u> to timely act on her intentions as specified in the statement of intention within the time prescribed by § 521(a)(2).[31]  The conjunctive nature of these subsections is critical to understanding the operation of this statute.

Section 521(a)(2)(A) in turn provides that if the individual debtor schedules debt secured by

---

[29]  *See In re Westman*, 300 B.R. 338, 342 (Bankr. D. Minn. 2003) (Defendant had burden of proof on any defenses that it raised to an alleged stay violation, including the inapplicability of the stay to defendant's actions).

[30]  Section 362(h)(1) was added to the Bankruptcy Code in 2005 by BAPCPA.  Most courts that have addressed § 362(h) have considered the question of whether this provision eliminated the "fourth option" (retain and pay) previously available to a debtor who is current on her secured debt.  *See In re Rowe,* 342 B.R. 341 (Bankr. D. Kan. 2006).

[31]  Section 362(h)(1) states: "In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, . . . and such personal property shall no longer be property of the estate <u>if the debtor fails</u> within the applicable time set by section 521(a)(2) – (A) to file timely an statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property [reaffirm] . . .; <u>and</u> (B) to take timely the action specified in such statement, as it may be amended before expiration of the period for taking action, unless such statement specifies the debtor's intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms." (Emphasis added).

-10-

property of the estate, she shall, within 30 days of the date of the petition or before the first meeting of creditors, file a statement of her intention to surrender or redeem the property, or to reaffirm the debt it secures. Subsection (a)(2)(B) states that the debtor shall act upon her intentions not later than 30 days after the first scheduled meeting of creditors. Subsection (a)(2)(C) states that nothing in (A) or (B) shall affect debtor's or the trustee's rights in the property under the bankruptcy code, except as provided in § 362(h)(1). These subparagraphs of § 521(a)(2) are also in the conjunctive.[32]

Applying these Code provisions to the facts found above, the Court concludes that the automatic stay attached as provided by § 362(a) when this case was filed on March 31, 2008. Ms. Nulik's statement of intention filed with her petition on that date clearly indicates her intention to surrender the mobile home. She filed her statement of intention well within the 30-day period allotted by § 521(a)(2)(A). 21st Mortgage's April 21, 2008 letter to the Trustee unequivocally states that the mobile home has been surrendered –

> This letter is to advise you that your client [sic] *has voluntarily surrendered* the manufacture home financed by 21st Mortgage Corporation . . . .[33]

---

[32] Section 521(a)(2) provides: "if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate – (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, <u>the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property</u> and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property; (B) within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, within such 30-day period fixes, <u>the debtor shall perform his intention with respect to such property</u>, as specified by subparagraph (A) of this paragraph; <u>and</u> (C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, <u>except as provided in section 362(h)</u>." (Emphasis added).

[33] Trial Ex. C.

-11-

Case 08-05257    Doc# 55    Filed 12/08/10    Page 11 of 16

So, Ms. Nulik not only timely filed her statement of intent to surrender the mobile home on March 31, but she also performed her intent by surrendering it in fact sometime prior to April 21 and prior to the May 8 § 341 meeting, well in advance of the performance deadline set by § 521(a)(2)(B).[34] Therefore, under the plain language of § 362(h)(1), the property did not exit the estate nor did the stay automatically terminate. 21st Mortgage took possession of the property in derogation of the Trustee's rights and in violation of the stay, which, according to § 521(a)(2)(C), are to be unaffected when the debtor complies with the statement of intention procedures.

What has occurred here is that 21st Mortgage took over the mobile home without stay relief. When it did so, it acted to obtain possession of property of the bankruptcy estate and exercised control over it in violation of § 362(a)(3). It sold that property without obtaining stay relief. While the Court agrees that the defendant's lien attached to the proceeds of that sale, the estate was deprived of the income that asset could earn as a result of the defendant's utter disregard of the bankruptcy code. Mr. Caldwell used the terms "abandon" and "surrender" interchangeably, but they are not legal equivalents. The Court might look favorably upon a creditor who, after receiving no response from a trustee, unilaterally acts to secure property that has been abandoned by a debtor and then seeks relief from the Court. But that is not what happened here. Here, the creditor took possession of, removed, and sold property out from under the Trustee's nose without any legal justification. Its erroneous belief that "abandonment" by a debtor somehow equates to

---

[34] Apart from the clear expression in the letter, Mr. Caldwell testified that the April letter would not have gone out if the debtor had not vacated or abandoned the property. In addition, he testified that the park where the mobile home was located, certified prior to the April 21 letter that the mobile home was abandoned.

Case 08-05257    Doc# 55    Filed 12/08/10    Page 12 of 16

"abandonment" by a trustee from the estate is simply untenable.[35] Section 554 sets out clear procedural requirements for that and, moreover, the trustee can only abandon that property to the debtor.[36] The debtor cannot "abandon" property to a creditor in a chapter 7 case. Accordingly, the Court concludes that 21st Mortgage committed a willful violation of the automatic stay.

Section 362(k)(1) provides that an individual injured by a willful violation of the automatic stay "shall" recover actual damages, including costs and attorney's fees, and in appropriate circumstances, may recover punitive damages. There are three barriers to awarding damages and sanctions in this case. First, there is some dispute in the law over whether a trustee is an "individual" for the purposes of § 362(k)(1).[37] Second, while the award of actual damages to an

---

[35] Even if 21st Mortgage's actions were carried out under a misapprehension of the applicability of the automatic stay in these circumstances, its error is no defense. *In re Gagliardi*, 290 B.R. 808, 818 (Bankr. D. Colo. 2003) (Creditor acts at its own peril when it usurps bankruptcy court's role in determining the scope of the automatic stay; creditor's good faith belief that it had the right to engage in the conduct found to violate the stay is not relevant to determination of whether the stay violation was willful.). A willful violation of the stay does not mean that 21st Mortgage must have specifically intended to violate the stay. It merely requires that its acts be deliberate and intentional. *See In re Westman*, *supra* (It is a willful violation of the automatic stay when a creditor violates the stay with knowledge that the bankruptcy petition has been filed.); *In re Anderson*, 430 B.R. 882, 887-88 (Bankr. S.D. Iowa 2010) (Reliance upon a computer system and its data does not excuse actions taken in violation of the automatic stay.); *In re Daniels,* 316 B.R. 342, 351-52 (Bankr. D. Idaho 2004) (Creditor's good faith reliance on advice of counsel is no defense to a willful violation of the stay; creditor who acted under mistaken belief that it was under no obligation to undo collection process committed a willful violation.). 21st Mortgage clearly acted with knowledge of Ms. Nulik's pending bankruptcy case and the automatic stay and its violation was willful.

[36] *See In re Gagliardi*, 290 B.R. at 818 (Property of the estate is deemed abandoned only after a motion to abandon is properly served on creditors and other interested parties and an abandonment order is entered or an asset has not been administered by the trustee at the time of closing the case); *In re Soll,* 181 B.R. 433, 444-45 (Bankr. D. Ariz. 1995) (Debtors' vacating of premises is not abandonment so as to remove property from bankruptcy estate.).

[37] *See In re Howard,* 428 B.R. 335, 339 (Bankr. W.D. Pa. 2010) (citing numerous cases that hold a chapter 7 trustee is an "individual" with standing to recover damages on behalf of the bankruptcy estate for violation of the automatic stay)*; Morris v. St. Joseph Medical Center, Inc.*

individual is mandatory, a claimant must prove the amount of actual damages with reasonable certainty.[38] Third, if the creditor is acting in the "good faith belief" that the property taken was no longer in the estate under § 362(h), punitive damages are expressly not available.[39]

Because of the lack of persuasive evidence concerning the Trustee's actual damages in this case, the Court need not reach the issue of the Trustee's entitlement to damages as an "individual" under § 362(k)(1). The Trustee seeks $2,400 or four months' lost rent of the ten year old mobile home during the period September through December of 2008 after which 21st Mortgage sold it. On cross-examination, the Trustee conceded that he had not personally inspected or evaluated the mobile home. Nor had his property manager evaluated the mobile home. The Trustee stated that he had experience in renting mobile homes in the course of administering estate assets and that he typically obtained a monthly rental in the range of $600-$800.[40] In this case, the Trustee stated that he could have rented the mobile home for $600 a month "without any problem," even though debtors' two bedroom stick-built home (which debtors scheduled with a value of $65,000) in Winfield was rented for $495 per month. There was no evidence that this mobile home bore any similarity to those he had rented in the past. Nor was there any indication of any prospective tenant

---

*(In re Fisher),* 1996 WL 695401 at *5 (D. Kan. Nov. 27, 1996). *But see In re Pace,* 67 F.3d 187 (9th Cir. 1995) (concluding that a chapter 7 trustee is not an "individual" entitled to recover attorney's fees as damages under former § 362(h) [now § 362(k)]).

[38] *See In re Gagliardi*, 290 B.R. at 819.

[39] Section 362(k)(2) provides: "If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages." The Trustee here makes no assertion that 21st Mortgage's actions taken in reliance upon § 362(h) were in bad faith, and therefore, the Trustee is not entitled to punitive damages.

[40] The Trustee could not identify any comparable rentals of mobile homes.

-14-

expressing an interest in this mobile home. The Trustee's claimed lost rent damages are simply too speculative.[41] Further, the record suggests that lot rent would have accrued while the Trustee rented the home. This accrual would represent an administrative expense that would reduce the estate's net rent. In the absence of any evidence concerning the net rents, the Court cannot determine how much the Trustee lost as a result of 21st Mortgage's willful stay violation.

Likewise, the Trustee offered no proof of the $1,500 amount sought for attorney fees that would support this Court's award of attorney fees. It is not appropriate for the Court to guess at those fees when the Trustee could easily have documented what time was expended in the pursuit of this cause of action. The Court does not doubt that the Trustee was put to considerable expense; that expense, however, is simply not proven and the fees cannot be allowed.[42]

Make no mistake, were there sufficient record evidence, this Court would not hesitate to assess damages, including demonstrated attorney fees, against 21st Mortgage for what it deems to be a clear stay violation. But the Court has been disarmed first by the relief chosen by the Trustee and second by the deficient evidence in this matter. As noted before, in the absence of evidence suggesting that 21st Mortgage acted in other than good faith, § 362(k)(1) prohibits the award of punitive damages or sanctions. Had the Trustee persisted in his contempt motion, this Court would have had no hesitation to visit meaningful sanctions upon it and should 21st Mortgage or any other creditor follow this path again, the Court is likely to act decisively to protect its jurisdiction and the property of the estate.

---

[41] *See In re Soll,* 181 B.R. at 450; *In re Beair,* 168 B.R. 633, 637 (Bankr. N.D. Ohio 1994).

[42] *See In re Gagliardi*, 290 B.R. at 819-20 (Attorney fees sustained to enforce the automatic stay are recoverable as actual damages.); *In re Beair,* 168 B.R. at 638.

Case 08-05257    Doc# 55    Filed 12/08/10    Page 15 of 16

Conclusion

At the time of 21st Mortgage's actions, the mobile home in question was property of the bankruptcy estate. 21st Mortgage committed a willful violation of the automatic stay when it took possession of the mobile home and proceeded to sell it without obtaining a stay relief order from the Court. However, the Trustee failed to bear the burden of proving his actual damages at trial. Therefore, judgment should be entered for the defendant, each party to bear its costs.

A Judgment on Decision shall issue this day.

# # #